AO 106 (Rev. 01/09) Application for a Search Warrant

FILED
JUL 2 4 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A ~~silver~~ black LG, Model LS995 cellular telephone, FCC ID: ~~ZNIFLS995~~ ZNFLS995

Case No. '17MJ2504

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Southern District of California *(identify the person or describe property to be searched and give its location)*: See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. § 841 and 846, and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Michael Rod, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/20/17

[signature]
*Judge's signature*

City and state: San Diego, CA

Barbara L. Major, U.S. MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT**

I, Michael Rod, being duly sworn, declare and state:

**INTRODUCTION**

1. This affidavit supports an application to search the following target property:

a. a ~~silver~~ black LG, Model LS995 cellular telephone, FCC ID: ~~ZNIFLS995~~ ZNFLS995 (**"Target Telephone"**);

as described in Attachment A, and seize evidence of crimes, specifically, Title 21, U.S.C., §§ 841 and 846, Conspiracy and Possession with Intent to Distribute Methamphetamine.

2. The **Target Telephone** was seized from WILLIAM EPENESA ("EPENESA") on May 17, 2017, at the time of EPENESA's arrest for the possession with intent to distribute 50 grams or more of mixture and substance containing a detectable amount of methamphetamine. The **Target Telephone** is currently in the possession of the Federal Bureau of Investigations ("FBI"), 10385 Vista Sorrento Pkwy, San Diego, California 92121.

3. Based on the information below, there is probable cause to believe that a search of the **Target Telephone** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this

affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephone**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21 of the United States Code.

6. I am a Special Agent of the Federal Bureau of Investigation and have been so employed since May 2010. I am currently assigned to the San Diego Field Division, North County Resident Agency. Prior to joining the FBI, I was a United States Marine Corps Judge Advocate serving on active duty from November 2001 until May 2010. In my capacity as a Judge Advocate, I prosecuted and defended violations of the Uniform Code of Military Justice, acted as the Investigating Officer during criminal proceedings, provided legal assistance to service members, and advised military commanders on a wide variety of civil and administrative matters.

7. I have received twenty-one (21) weeks of training at the FBI Academy in Quantico, Virginia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of sources, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic

techniques, interviewing, and a variety of other subjects. I have acted as the lead investigator on a variety of cases and have participated in multiple cases that have focused on gang related matters.

8. Since July 2012, I have been assigned to the North County Regional Gang Task Force (NCRGTF). The San Diego County Sheriff's Department has appointed me a Special Deputy assigned to the Sheriff's Department Special Investigation Division and specifically assigned to the NCRGTF. During my time at the NCRGTF, I have had personal contact with dozens of self-admitted or known gang members and their associates and have discussed their lifestyles, method of operations regarding violent and property crimes, and their drug trafficking and drug distributing activities. I have participated in investigations involving criminal gang members including but not limited to Hispanic criminal street gangs and have performed various investigative tasks involving the following:

a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking and distributing controlled substances and those suspected of trafficking in controlled substances;

b. Participating in the tracing of monies and assets gained by controlled substances traffickers and dealers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking and distribution of controlled substances (laundering of monetary instruments); and

d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking and distributing of controlled substances and the laundering of monetary instruments.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug dealers and traffickers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of hard drugs, such as cocaine, heroin, and methamphetamine. Drug dealers and traffickers use cellular and digital telephones, in part, because these individuals believe law enforcement cannot track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in drug dealing and trafficking investigations, I am also aware that:

a. Drug dealers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug dealers and traffickers and their accomplices will use cellular telephones to coordinate with each other, contact their buyers and suppliers, and negotiate the sale of their illegal merchandise;

c. Drug dealers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time

their buyers or suppliers will arrive at predetermined locations;

d. Drug dealers and traffickers will use cellular telephones to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

e. Drug dealers and traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by drug dealers and traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On May 17, 2017, at approximately 10:41 p.m., Oceanside Police Department ("OPD") Officers, in full uniform and driving an unmarked Oceanside police vehicle, observed a black Cadillac sedan driving southbound on El Camino Real in Oceanside, California. The vehicle's rear license plate was illegible and its rear brake light was broken, which are violations of the California Vehicle Code. Based on these violations, officers activated their emergency lights and siren and initiated a traffic-enforcement stop. The vehicle complied. Officers observed three individuals in the vehicle. One of the officers contacted the driver of the vehicle, Joseph Williams ("Williams") and immediately recognized him from previous law enforcement contacts. The officer was aware that Williams was on active probation with a Fourth Amendment waiver, which the officers confirmed

with OPD Dispatch.

12. OPD officers arrived to assist. An officer removed Williams from the vehicle and conducted a search of his person. As they were conducting the search of Williams, another officer observed EPENESA, the front seat passenger, reach towards the floorboard near the bottom of his seat. The officer ordered EPENESA to stop reaching and to show his hands. EPENESA complied.

13. After removing all occupants from the vehicle, the officers located a small bag underneath EPENESA's seat. Inside the bag, the officers located approximately seven individually packaged bindles. Each bindle contained a white crystalline substance that the officers recognized as methamphetamine. Also located in the zippered bag was a plastic grocery bag, which appeared to be used to make the individual bindles. Officers also found 10 Hydroxyzine pills and drug paraphernalia including foil, metal pins, a straw, and a methamphetamine pipe.

14. The white crystalline substance later tested positive for methamphetamine and had a total approximate net weight of 52.01 grams.

15. Post-arrest, EPENESA requested an attorney, but spontaneously stated that "she better tell the truth," which seemed to indicate that the drugs belonged to Maria Fischer, the rear passenger. Williams agreed to speak with the officers and stated that he had just picked up both passengers and was unaware of the drugs.

16. Officers seized the **Target Telephone** from EPENESA at the time of her arrest. The officers did not download information from the **Target Telephone** after EPENESA's arrest.

17. Based upon my experience and investigation in this case, I believe

that EPENESA, as well as other persons as yet unknown, were involved in an on-going conspiracy to possess and distribute methamphetamine. Based on my experience investigating drugs smugglers and dealers, I also believe that EPENESA used the **Target Telephone** to coordinate with co-conspirators regarding the possession and delivery of the controlled substances and to otherwise further this conspiracy.

18. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which may identify other persons involved in drug trafficking and distribution activities.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug trafficking and distribution activities of EPENESA, and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions

such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the Subject Telephone and submit it to FBI's computer forensics group for analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques,

including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

23. Based on all of the facts and circumstances described above, there is probable cause to conclude that EPENESA used the **Target Telephone** to facilitate the offenses of importation of heroin and methamphetamine and conspiracy to do the same. The **Target Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846.

24. Because the phone was seized, there is probable cause to believe that evidence, fruits, and instrumentalities of illegal activity committed by EPENESA continues to exist on the **Target Telephone**.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Michael Rod
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me this 20 day of July, 2017.

Honorable Barbara L. Major
United States Magistrate Judge, Southern District of California